CA 05 069S

AO 243 (Rev. 5/85)

MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District RHODE ISLAND | |
|---|---|---|
| Name of Movant LUIS OLIVERA | Prisoner No. | Case No. 03-70S |
| Place of Confinement RHODE ISLAND DEPARTMENT OF CORRECTION | | |

UNITED STATES OF AMERICA v. LUIS OLIVERA (name under which convicted)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack FEDERAL DISTRICT COURT OF RHODE ISLAND, PROVIDENCE, RHODE ISLAND

2. Date of judgment of conviction 19 FEBRUARY 2004

3 Length of sentence 115 MONTHS (9 YRS. - 7 MOS.)

4. Nature of offense involved (all counts) CONSPIRACY TO DISTRIBUTE COCAINE (CT. 1); AIDING AND ABETTING THE DISTRIBUTION OF COCAINE (CT. 2); AND POSSESSION OF A FIREARM AFTER A FELONY CONVICTION (CT. 3).

5. What was your plea? (Check one)
   - (a) Not guilty ☐
   - (b) Guilty ☑
   - (c) Nolo contendere ☐

If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details: PURSUANT TO THE PLEA AGREEMENT I WAS TO PLEAD GUILTY TO CTS. 1 AND 2 FOR DISMISSAL OF CT. 1. HOWEVER, PURSUANT TO MY MOTION TO WITHDRAW MY GUILTY PLEA, THE COURT ONLY VACATED MY GUILTY PLEA TO CT. 2.

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   - (a) Jury ☐
   - (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐ No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☑ No ☐



1

AO 243 (Rev. 5/85)

9. If you did appeal, answer the following:

(a) Name of court UNITED States Court of APPEALS, FIRST CIRCUIT.

(b) Result Still PENDING

(c) Date of result ______

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☐ No ☑

11. If your answer to 10 was "yes", give the following information:

(a) (1) Name of court ______

(2) Nature of proceeding ______

(3) Grounds raised ______

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

(5) Result ______

(6) Date of result ______

(b) As to any second petition, application or motion give the same information:

(1) Name of court ______

(2) Nature of proceeding ______

(3) Grounds raised ______

AO 243 (Rev. 5/85)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

(5) Result ________________________________________

(6) Date of result ________________________________________

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc. Yes ☐ No ☐
(2) Second petition, etc. Yes ☐ No ☐

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

AO 243 (Rev. 5/85)

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f)Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: GUILTY PLEA MADE UNKNOWINGLY AND INVOLUNTARILY, AND WITHOUT AN UNDERSTANDING OF THE CONSEQUENCES OF THE PLEA.

Supporting FACTS (state *briefly* without citing cases or law) DEFENDANT WAS INCORRECTLY ADVISED THAT THE PENALTY FOR COUNT-III, THE POSSESSION OF FIREARMS CHARGE, "WAS A MAXIMUM OF TEN YEARS' IMPRISONMENT, A FINE OF $250,000.00, A TERM OF SUPERVISED RELEASE FROM THREE YEARS AND UP TO LIFE, AND A MANDATORY SPECIAL-ASSESSMENT OF $100.00." (CONTINUED ON ADDITIONAL PAGE #1)

B. Ground two: CONVICTION OBTAINED BY DISTRICT COURTS ERROR IN ALLOWING DEFENDANT TO REPRESENT HIMSELF.

Supporting FACTS (state *briefly* without citing cases or law): THE COURT FAILED TO ADVISE DEFENDANT OF THE DANGERS AND DISADVANTAGES OF SELF-REPRESENTATION IN ORDER TO DETERMINE WHETHER HE UNDERSTOOD HIS RIGHTS IN WAIVING COUNSEL, AND FAILED TO SECURE A WRITTEN AND/OR OTHERWISE VALID WAIVER OF COUNSEL FROM DEFENDANT. (CONTINUED ON ADDITIONAL PAGE #1)

C. Ground three: CONVICTION OBTAINED BY DISTRICT COURTS ABUSE OF DISCRETION IN VIOLATION OF STATUTORY AND CONSTITUTIONAL RIGHTS.

Supporting FACTS (state *briefly* without citing cases or law): DEFENDANT FILED A MOTION, PRO SE, TO WITHDRAW HIS GUILTY PLEA TO COUNTS II AND III. ON 13 FEBRUARY 2004, THE GOVERNMENT AND THE COURT CONCEDED THAT ERRORS WERE MADE IN THE PLEA AGREEMENT AND STATED AT THE PLEA COLLOQUY. HOWEVER, THE COURT ONLY ALLOWED THE

AO 243 (Rev. 5/85)

DEFENDANT TO WITHDRAW HIS GUILTY PLEA ON COUNT-II, WHILE NOT ALLOWING THE VACATION OF COUNT-III. (SEE PAGE #1-CONT.)

D. Ground four: CONVICTION OBTAINED BY MANUFACTURED FEDERAL JURISDICTION.

Supporting FACTS (state *briefly* without citing cases or law): THE COURT LACKED JURISDICTION TO PROSECUTE AND/OR TO TRY DEFENDANT ON THE CHARGE OF "POSSESSION OF FIREARM BY PERSON PREVIOUSLY CONVICTED OF CRIME PUNISHABLE BY IMPRISONMENT FOR A TERM EXCEEDING ONE YEAR". WITH RESPECT TO COUNT-III THE INDICTMENT - ALLEGED: "ON OR ABOUT JULY 11TH, 2003, HERE IN THE DISTRICT OF RHODE ISLAND, THE DEFENDANT, (CONTINUED ON ADDED PAGE #2)

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: GROUNDS TWO THROUGH EIGHT WERE NOT PREVIOUSLY PRESENTED BECAUSE TRIAL COUNSEL FAILED TO PRESENT THEM AND APPELLATE COUNSEL FAILED TO PRESENT THEM ON APPEAL FOR REVIEW. FURTHER, THE APPEALS COURT ORDINARILY WILL NOT ENTERTAIN AN (INEFFECTIVE ASSISTANCE OF COUNSEL) CLAIM ON DIRECT APPEAL. SUCH A CLAIM MUST BE BROUGHT UNDER 28 U.S.C. §2255.

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☑ No ☐

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing EDWARD C. ROY, ESQ. - 10 WEYBOSSET ST., SUITE 300 - PROVIDENCE, R.I. 02903 (FEDERAL DEFENDER'S OFC.)

(b) At arraignment and plea * SAME *

(c) At trial * SAME *

(d) At sentencing * SAME *

AO 243 (Rev. 5/85)

(e) On appeal X ~~Luis Oliveira~~ Ralph Perrotta
163 Arnold Av. Cranston RI 02905

(f) In any post-conviction proceeding LUIS OLIVERA, DEFENDANT - PRO SE, P.O. BOX-8249, CRANSTON, R.I. 02920. RE: THIS CURRENT MOTION.

(g) On appeal from any adverse ruling in a post-conviction proceeding ______

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☐ No ☑

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☑

(a) If so, give name and location of court which imposed sentence to be served in the future: ______

(b) Give date and length of the above sentence: ______

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

______
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

X 2-16-05
(date)

X Luis Oliveira
Signature of Movant

**CONTINUED SUPPORTING FACTS OF GROUND ONE:** HOWEVER, DEFENDANT WAS ACTUALLY SUBJECT TO A MANDATORY MINIMUM OF FIFTEEN YEARS' IMPRISONMENT AND AN INCREASED FINE, BECAUSE OF HIS THREE PRIOR FELONIES INVOLVING VIOLENCE OR SERIOUS DRUG OFFENSES. ADDITIONALLY, DEFENDANT WAS INCORRECTLY ADVISED OF THE TERM OF SUPERVISED RELEASE WITH RESPECT TO COUNT-III. THE COURT STATED THAT, "COUNT-III REQUIRED A TERM OF SUPERVISED RELEASE FROM THREE YEARS AND UP TO LIFE." WHILE, ON THE CONTRARY, THE GUIDELINE PROVISIONS CALLED FOR A TERM OF SUPERVISED RELEASE OF TWO TO THREE YEARS. (SEE ADDITIONAL SUPPORTING FACTS, i.e., T. p.6, LN. 15-19; T. p.8, LN. 10-18 AND T. p.34, LN. 22-25 ATTACHED HEREIN).

**CONTINUED SUPPORTING FACTS OF GROUND TWO:** THROUGH "MOTIONS TO REPLACE APPOINTED COUNSEL AND A CONTINUANCE TO ALLOW DEFENDANT TO RETAIN COUNSEL," DEFENDANT COMPLAINED TO THE COURT PROBLEMS AND/OR DISAGREEMENTS WITH APPOINTED COUNSEL. HOWEVER, THE COURT DENIED DEFENDANT'S MOTIONS, FORCING HIM TO RELUCTANTLY CHOOSE PROCEEDING PRO SE OVER CONTINUING WITH OPPOSED APPOINTED COUNSEL, WHEN DEFENDANT NEVER TRULY WANTED TO REPRESENT HIMSELF. THE COURT DID NOT PROVIDE THE PROPER INQUIRY WITH RESPECT TO SAID MOTIONS. (SEE ADDITIONAL SUPPORTING FACTS, i.e., T. p.3, LN. 7-12 WITH T. p.45, LN. 11-25 AND T. p.46, LN. 1-17).

**CONTINUED SUPPORTING FACTS OF GROUND THREE:** THE ERROR DISCOVERED AND DISCLOSED BY THE PROSECUTOR WAS FOUND WITH RESPECT TO BOTH COUNTS-II AND III. THE COURT STATED: "ALTHOUGH THERE WAS AN ERROR WITH RESPECT TO COUNT-III, MR. CHAFEE IS NOT JOINING IN ANY MOTION OF YOURS TO VACATE COUNT-III." HOWEVER, THE COURT FAILED TO INQUIRE AND TO GUAGE WHETHER THE ERROR WITH RESPECT TO COUNT-III WAS HARMLESS OR AFFECTED DEFENDANT'S SUBSTANTIAL RIGHTS, IN ORDER TO ALLOW AND/OR AFFORD

DEFENDANT A FAIR OPPORTUNITY TO WITHDRAW HIS GUILTY, DUE TO THE ERROR DIS-COVERED AND DISCLOSED BY THE PROSECUTOR, AS DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY WAS NOT FOR THE SAME REASONS AS THOSE DISCOVERED AND DISCLOSED BY THE GOVERNMENT. (SEE ADDITIONAL SUPPORTING FACTS, i.e., T. p. 3, LN. 18-25 AND T. p. 4, LN. 1-25 WITH T. p. 5, LN. 1-11 ATTACHED HEREIN).

**CONTINUED SUPPORTING FACTS OF GROUND FOUR:** HAVING BEEN CONVICTED OF A CRIME - PUNISHABLE BY A TERM OF IMPRISONMENT EXCEEDING ONE YEAR, DID KNOWINGLY POSSESS IN AND AFFECTING COMMERCE FOUR FIREARMS, A SMITH AND WESSON .38, A BROWNING .9 MILLIMETER, ANOTHER BROWNING .9 MILLIMETER, AND A COLT PYTHON .357." HOWEVER, THE DEFENDANT'S ACTIONS DID NOT IMPLICATE AN "ESSENTIAL FEDERAL ELEMENT" NECESSARY TO CONSTITUTE A FEDERAL CRIME, BECAUSE THE 'ONLY LINK' BETWEEN DEFENDANT'S CON-DUCT AND THE **FEDERAL ELEMENT - IN AND AFFECTING COMMERCE - WAS SUPPLIED BY FEDERAL ATF-AGENTS.** THE FOUR FIREARMS ALLEGED IN THE INDICTMENT WERE OWNED BY THE FEDERAL GOVERNMENT, USED BY ATF-AGENTS AS PRACTICE OR PROP GUNS, AND TRANSPORTED FROM THE STATE OF VERMONT TO THE STATE OF RHODE ISLAND SOLELY BY ATF-AGENTS ON JULY 11TH, 2003; THEREBY, SUPPLYING THE FEDERAL ELEMENT OF "IN AND AFFECTING COMMERCE" - THEMSELVES, AS DEFENDANT DID NOT CAUSE THE FIREARMS TO TRAVEL ACROSS STATE LINES. ADDITIONALLY, DEFENDANT DID NOT STIPULATE TO NOR DID THE GOVERNMENT PRESENT ANY EVIDENCE TENDING TO SHOW THAT HE, IN FACT, HAD "PREVIOUSLY BEEN CONVICTED OF A CRIME PUNISHABLE BY IMPRISONMENT TERM IN EXCESS OF ONE YEAR," WHICH IS THE CENTER-PIECE ELEMENT OF THE CHARGE WITH RESPECT TO COUNT-III. (SEE ADDITIONAL SUPPORTING FACTS, i.e., T. p. 6, LN. 11-16 (GRAND JURY MINUTES) TESTIMONY OF ATF-AGENT - MICHAEL WEST).

* ADDITIONAL GROUNDS *

E. GROUND FIVE: CONVICTION AND SENTENCE OBTAINED BY THE GOVERNMENT'S BREACH OF THE PLEA AGREEMENT.

SUPPORTING FACTS: AS PART OF THE PLEA AGREEMENT THE GOVERNMENT AGREED THAT, "FOR PURPOSES OF DETERMINING THE OFFENSE LEVEL, THE GOVERNMENT AGREES TO RECOMMEND A TWO-LEVEL REDUCTION IN THE OFFENSE LEVEL FOR ACCEPTANCE OF RESPONSIBILITY." HOWEVER, THE GOVERNMENT FAILED TO "EXPRESSLY REQUEST" THIS TERM OF THE PLEA AGREEMENT TO THE COURT AT SENTENCING. THE FACT THAT THE GOVERNMENT DISMISSED COUNTS-I AND II WITH PREJUDICE, ON ITS OWN, DID NOT RELEASE THE GOVERNMENT FROM ITS PLEA AGREEMENT AND DUTY TO RECOMMEND THE TWO-LEVEL REDUCTION WITH RESPECT TO COUNT-III, BECAUSE THE PLEA AGREEMENT WAS NOT VOIDED BY EITHER PARTY NOR REJECTED BY THE COURT. IT WAS STILL VALID FOR PURPOSES OF SENTENCING WITH RESPECT TO DEFENDANTS GUILTY PLEA TO COUNT-III, AND THE TWO-LEVEL REDUCTION WOULD HAVE ADJUSTED DEFENDANT'S OFFENSE LEVEL AT 24, INSTEAD OF 26, FOR SENTENCING PURPOSES. THE GOVERNMENT'S BREACH OF THE PLEA AGREEMENT SUBSTANTIALLY AFFECTED DEFENDANT'S RIGHTS. (SEE ADDITIONAL SUPPORTING FACTS, i.e., T. p.6, LN. 2-5 (CHANGE OF PLEA TRANSCRIPT), WITH T. p.34, LN. 8-21 (SENTENCING TRANSCRIPT)).

F. GROUND SIX: CONVICTION OBTAINED BY THE UNCONSTITUTIONAL FAILURE OF THE PROSECUTION TO DISCLOSE TO THE DEFENDANT EVIDANCE FAVORABLE TO THE DEFENDANT.

SUPPORTING FACTS: THE GOVERNMENT WAS AWARE OF AND FAILED TO DISCLOSE — STATEMENTS GIVEN BY A GOVERNMENT WITNESS (JENNIFER WATSON) WHICH — TENDERED TO BE EXCULPATORY AND COULD HAVE BEEN USED BY THE DEFENDANT TO

SUBPOENA JENNIFER WATSON AND/OR USED BY THE DEFENSE TO IMPEACH THE STATEMENTS AND TESTIMONY OF THE GOVERNMENT'S COOPERATING WITNESS, I.E., ALLAN BARTELSON. THE STATEMENTS AND TESTIMONY OF ALLAN BARTELSON HAD A DIRECT BARING UPON DEFENDANTS CONVICTION AND SENTENCE, AND DEFENDANT HAD A RIGHT TO EVIDENCE IN THE GOVERNMENTS POSSESSION, I.E., STATEMENTS OF - JENNIFER WATSON, GIVEN TO DETECTIVE DAVE NEASE OF THE NORTHERN VERMONT DRUG TASK FORCE ON OR ABOUT 18TH JUNE 2003, AND STATEMENT GIVEN TO ATF-AGENT MICHAEL WEST ON OR ABOUT 25TH JUNE 2003, THAT WOULD HAVE SPOTLIGHTED THE UNRELIABLE AND UNTRUTHFUL STATEMENTS AND TESTIMONY OF ALLAN BARTELSON. JENNIFER WATSON WAS THE "CONFIDENTIAL INFORMANT" IN CONNECTION WITH THE CASE AGAINST ALLAN BARTELSON, HOWEVER, SHE WAS NOT ENLISTED AS A "C.I." IN CONNECTION WITH THE CASE AGAINST DEFENDANT, LUIS OLIVERA, AS THE GOVERNMENT REVEALED HER IDENTITY TO DEFENSE IN A STATEMENT, AS DID ALLAN BARTELSON DURING HIS STATEMENTS AND TESTI-MONY. ON 18TH JUNE 2003, JENNIFER WATSON, KNOWN AS THE "C.I." IN ATF-AGENT MICHAEL WEST'S AFFIDAVIT, WAS THE ONLY PERSON IN THE CAR WITH ALLAN BARTELSON. JENNIFER WATSON WAS A "WITNESS" IN THE CASE OF LUIS OLIVERA AND HER STATEMENTS SHOULD HAVE BEEN DISCLOSED TO DEFENSE, ESPECIAL-LY, WHEN DEFENDANT MADE SUCH "BRADY REQUEST." (SEE ADDITIONAL SUPPORTING FACTS, I.E., T.P.63, LN.23-25; T.P.64, LN.1-23; T.P.47, LN.4-25; T.P.48, LN.1-15 (MOTION TO VACATE AND SENTENCING TRANSCRIPT) WITH AFFIDAVIT OF ATF-AGENT MICHAEL J. WEST - PAGE #1).

G. GROUND SEVEN: <u>CONVICTION OBTAINED BY DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL.</u>

**SUPPORTING FACTS:** ON 1 OCTOBER 2003, DEFENDANT WAS MISLED BY APPOINTED COUNSEL, EDWARD C. ROY, IN THAT COUNSEL COMMUNICATED TO DEFENDANT THAT COUNSEL WAS PREPARED FOR TRIAL, HOWEVER, DURING THE PROCESS OF PICKING THE JURY COUNSEL COERCED DEFENDANT TO PLEAD GUILTY. THE FOLLOWING ARE A SET OF ERRORS PREJUDICIAL TO DEFENDANT AND AFFECTED HIS SUBSTANTIAL RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL:

1. ON SEVERAL OCASSIONS DEFENDANT COMMUNICATED TO APPOINTED COUNSEL, EDWARD C. ROY, THAT HE WANTED A TRIAL BECAUSE HE DID NOT — COMMIT THE CRIMES HE WAS CHARGED WITH;

2. TRIAL COUNSEL MISREPRESENTED TO DEFENDANT THAT "THERE WAS AN VIDEO TAPE, MADE BY ATF-AGENTS ON 11 JULY 2003, OF HIM WITH CO-DEFENDANT, ROBERT CAMERA, PRIOR TO CAMERA GOING TO MEET THE ATF-INFORMANT WITH COCAINE".. TO THE CONTRARY, NO SUCH VIDEO SUREILLANCE TAPES EXISTED SHOWING THAT I AND CAMERA MET;

3. TRIAL COUNSEL MISREPRESENTED TO DEFENDANT THAT "IF HE PLED GUILTY HE WILL RECEIVE A THREE LEVEL REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY AND HIS SENTENCING RANGE WOULD BE 37 TO 46 MONTHS".. HOWEVER, TRIAL COUNSEL FAILED TO INFORM THE COURT, AT SENTENCING, THAT THE ACCEPTANCE OF RESPONSIBILITY REDUCTION WAS PART OF THE PLEA AGREEMENT. FURTHER, TRIAL COUNSEL MISINFORMED DEFENDANT WITH REGARD TO HIS OFFENSE LEVEL AND SENTENCE RANGE;

4. ON SEVERAL OCASSIONS DEFENDANT COMMUNICATED TO TRIAL COUNSEL TO FILE A "MOTION TO VACATE HIS GUILTY PLEA", CITING SEVERAL REASONS WHY HE WANTED TO WITHDRAW AND/OR HAVE HIS GUILTY PLEA — VACATED. TRIAL COUNSEL REFUSED TO FILE THE SAID MOTION AS REQUESTED BY DEFENDANT, STATING THAT "DEFENDANT HAD NO BASIS NOR A VALID REASON";

HOWEVER, THROUGH SEVERAL LETTERS TO TRIAL COUNSEL AND THROUGH A TELEPHONE CALL MADE BY DEFENDANT'S FIANCEE, DOROTHY RODRIGUEZ, TO TRIAL COUNSEL, DEFENDANT PROVIDED A BASIS AND/OR SEVERAL VALID REASONS WHY HE WANTED TO WITHDRAW HIS GUILTY PLEA. FURTHER, TRIAL COUNSEL COMMUNICATED TO DOROTHY RODRIGUES THAT "DEFENDANT WILL HAVE TO FILE HIS OWN MOTION;"

5. AS A RESULT OF TRIAL COUNSEL'S REFUSAL TO FILE A MOTION TO WITHDRAW GUILTY PLEA ON DEFENDANTS BEHALF, DEFENDANT WAS FORCED TO FILE THE SAID MOTION, PRO SE, ON HIS OWN. AND AS ASSENTED TO, THE GOVERNMENT JOINED IN THE MOTION, DISCOVERING AND DISCLOSING THAT THERE WERE ERRORS MADE IN THE PLEA AGREEMENT AND AT THE PLEA COLLOQUY, ERRORS POINTED OUT TO AND IGNORED BY TRIAL COUNSEL. AS A RESULT OF THE PRO SE MOTION, A HEARING WAS HAD AND THE DISTRICT COURT GRANTED THE MOTION, IN PART, VACATING DEFENDANT'S GUILTY PLEA WITH RESPECT TO COUNT-II. SUBSEQUENTLY, THE GOVERNMENT MOVED TO DISMISS COUNTS-I AND II WITH PREJUDICE, AND THE DISTRICT COURT GRANT THE DISMISSALS;

6. TRIAL COUNSEL FAILED TO INVESTIGATE AND TO PURSUE EXCULPATORY EVIDENCE, REQUESTED BY DEFENDANT AND ADVISED BY THE COURT, i.e., STATEMENTS OF JENNIFER WATSON, A WITNESS, WHOM WAS ABLE TO "SHED LIGHT ON THE RELIABILITY AND TRUTHFULNESS OF THE STATEMENTS AND TESTIMONY" MADE AGAINST THE DEFENDANT BY GOVERNMENT WITNESS, ALLAN BARTELSON, WHOSE STATEMENTS AND TESTIMONY WERE USED TO INCREASE DEFENDANT'S OFFENSE LEVEL BY FOUR LEVELS, SUBJECTING DEFENDANT TO A SUBSTANTIALLY LONGER PRISON SENTENCE;

7. TRIAL COUNSEL MISLED DEFENDANT TO BELIEVE THAT THE GOVERNMENT WAS NOT GOING TO "USE ALLEGED PRIOR DRUG AND FIREARMS SALES

WITH ALLAN BARTELSON" AS RELEVANT CONDUCT TO INCREASE HIS SENTENCE, WHICH WAS USED TO INDUCE DEFENDANT TO PLEAD GUILTY. BASED UPON COMMUNICATION BETWEEN COUNSEL AND DEFENDANT ON THIS ISSUE, DEFENDANT WAS LED TO BELIEVE AND DID BELIEVE THAT THE GOVERNMENT "ORALLY AGREED NOT TO USE ANY RELEVANT CONDUCT AT SENTENCING TO INCREASE HIS SENTENCE, IF HE DID NOT GO TO TRIAL." TRIAL COUNSEL FAILED TO APPRISE THE COURT OF THIS "ORAL AGREEMENT" AT OR PRIOR TO SENTENCING, WHEN DEFENDANT DID NOT GO TO TRIAL AND THE GOVERNMENT BREACHED ITS AGREEMENT BY USING ALLEGED RELEVANT CONDUCT TO INCREASE HIS SENTENCE.

8. THE ABOVE ACTS AND OMISSIONS OF TRIAL COUNSEL VIOLATED DUE PROCESS AND DENIED DEFENDANT THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL DURING CRITICAL STAGES OF THE GUILT-INNOCENCE AND SENTENCING PHASE OF DEFENDANT'S CASE. (SEE ADDITIONAL SUPPORTING FACTS, i.e., T. p. 4, LN. 2-12; T. p. 33, LN. 18-20; T. p. 52, LN. 9-20; T. p. 3, LN. 8-17; T. p. 23, LN. 4-25 (MOTION TO VACATE AND SENTENCING TRANSCRIPT), WITH LETTERS FROM EDWARD C. ROY, TRIAL COUNSEL).

H. GROUND EIGHT: SENTENCE IMPOSED IS UNAUTHORIZED AND RESULTED IN CLEAR ERROR OF DEFENDANTS CONSTITUTIONAL RIGHTS.

SUPPORTING FACTS: DEFENDANT WAS SENTENCED ON 19 FEBRUARY 2004, TO A 115-MONTH TERM OF IMPRISONMENT. IN SENTENCING THE DEFENDANT, THE COURT FAILED TO DETERMINE WHAT THE BASE OFFENSE LEVEL FOR THE CHARGE OF POSSESSION OF FIREARM BY PERSON PREVIOUSLY CONVICTED OF CRIME PUNISHABLE BY IMPRISONMENT FOR A TERM EXCEEDING ONE YEAR, 18 U.S.C.A. § 922(g)(1), WAS. THE COURT THEN IMPOSED A 4-LEVEL ENHANCEMENT FOR RELEVANT CONDUCT, i.e., THAT THE FIREARM

WAS POSSESSED IN CONNECTION WITH TWO SEPARATE FELONY OFFENSES. THE COURT THEN ADJUSTED THE OFFENSE LEVEL TO 26. THE FACTS OR BASIS FOR THE 4-LEVEL ENHANCEMENT WERE NOT ALLEGED IN THE INDICTMENT, NEITHER WAS THE ADJUSTMENT FOUND BY A JURY, AS REQUIRED UNDER THE CONSTITUTION AND CLEARLY ESTABLISHED FEDERAL LAW. (SEE ADDITIONAL SUPPORTING FACTS, i.e., T.p. 34, LN. 2-25 (SENTENCING TRANSCRIPT))(WITH DEFENDANT'S OBJECTIONS NOTICE).

A MEMORANDUM OF LAW IS FILED IN SUPPORT OF THIS MOTION.

RESPECTFULLY SUBMITTED,

/S/ Luis Olivera

*DEFENDANT - PRO SE*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED States OF AMERICA

VS.

LUIS OLIVERA

CR-No. 03-708

# MEMORANDUM OF LAW

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br>VS.<br>LUIS OLIVERA | CR No. 03-708 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

THE DEFENDANT, LUIS OLIVERA, PRO SE, MOVES THIS HONORABLE COURT TO DISMISS, VACATE, SET ASIDE AND/OR TO CORRECT HIS SENTENCE ON THE GROUNDS THAT THE UNITED STATES DISTRICT COURT LACKED JURISDICTION TO TRY DEFENDANT ON THE ABOVE-NUMBERED INDICTMENT, THE GUILTY PLEA WAS NOT KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY MADE, ABUSE OF DISCRETION, DENIAL OF RIGHT TO COUNSEL, BREACH OF PLEA AGREEMENT, GOVERNMENT FAILURE TO DISCLOSE EXCULPATORY EVIDENCE, DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL, AND UNCONSTITUTIONALLY IMPOSED SENTENCE. DEFENDANT'S CONSTITUTIONAL AND STATUTORY RIGHTS HAVING BEEN VIOLATED, THIS CASE SHOULD BE DISMISSED WITH PREJUDICE AND/OR GUILTY PLEA AND SENTENCE VACATED TO ALLOW DEFENDANT TO PLEAD ANEW. THIS MEMORANDUM OF LAW IS FILED IN SUPPORT OF THAT MOTION.

# FACTS

THE DEFENDANT WAS ARRESTED BY MEMBERS OF THE PROVIDENCE POLICE AND MEMBERS OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES BUREAU ON AN OUTSTANDING WARRANT FOR A VIOLATION OF R.I. STATE PROBATION IN THE MID-AFTERNOON HOURS OF JULY 11, 2003. HE WAS THEN PRESENTED AS A PROBATION VIOLATOR IN R.I. 6TH DISTRICT COURT, AND WAS REMANDED TO THE ACI-INTAKE SERVICE CENTER WITHOUT BAIL.

ON 6TH AUGUST 2003, THE ABOVE-NUMBERED INDICTMENT WAS RETURNED TO U.S. DISTRICT COURT, CHARGING DEFENDANT WITH CONSPIRACY TO DISTRIBUTE COCAINE (CT. I), AIDING AND ABETTING THE DISTRIBUTION OF COCAINE (CT. II), AND POSSESSION OF A FIREARM BY A CONVICTED FELON (CT. III). MAGISTRATE JUDGE MARTIN ISSUED A WARRANT FOR ARREST OF DEFENDANT AND HE WAS BROUGHT BEFORE THE U.S. DISTRICT COURT. COUNSEL WAS APPOINTED, A DETENTION HEARING WAS HELD AT WHICH DEFENDANT WAS ORDERED DETAINED.

ON 1ST OCTOBER 2003, DEFENDANT CHANGED HIS NOT GUILTY PLEA TO GUILTY PURSUANT TO A PLEA AGREEMENT WITH THE GOVERNMENT. THEREAFTER, BEFORE SENTENCING AND PRIOR TO RECEIPT OF THE PRE-SENTENCE REPORT, DEFENDANT FILED MOTIONS TO REPLACE APPOINTED COUNSEL AND TO WITHDRAW HIS GUILTY PLEA.

ON 13TH FEBRUARY 2004, A HEARING WAS HELD AND DEFENDANT WAS DENIED A CONTINUANCE IN ORDER TO REPLACE APPOINTED COUNSEL, BUT INSTEAD, ALLOWED TO PROCEED PRO SE, REPRESENTING HIMSELF WITH RESPECT TO BOTH MOTIONS AND, IN PART, AT SENTENCING. DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA WAS GRANTED, IN PART AND DENIED, IN PART. THE DISTRICT COURT VACATED DEFENDANT'S GUILTY PLEA TO COUNT-II, BUT DENIED THE MOTION ON

DEFENDANT'S REASONS TO WITHDRAW HIS PLEA WITH RESPECT TO COUNT-III. SUBSEQUENTLY, THE GOVERNMENT MOVED TO DISMISS COUNTS-I AND II WITH PREJUDICE, AND THE DISTRICT COURT GRANTED SAID DISMISSALS.

ON 19 FEBRUARY 2004, SENTENCING HEARING WAS HELD, THE DISTRICT COURT INCREASED DEFENDANT'S OFFENSE LEVEL BY 4-LEVELS, OVER DEFENDANT'S OBJECTIONS, ADJUSTING HIS OFFENSE LEVEL AT 26 AND SENTENCING HIM TO 115-MONTHS, THE MAXIMUM SENTENCE ALLOWED FOR THAT APPLICABLE GUIDELINES RANGE. DEFENDANT GAVE NOTICE OF APPEAL.

## ARGUMENT

1. THE DISTRICT COURT ERRED BY ACCEPTING DEFENDANT'S TENDERED PLEA BECAUSE IT WAS NOT MADE KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY

A. THE DISTRICT COURT'S ACCEPTANCE OF DEFENDANT'S TENDERED PLEA DID NOT COMPORT WITH STATUTORY AND CONSTITUTIONAL REQUIREMENTS

THE UNITED STATES CONGRESS HAS PRESCRIBED CERTAIN REQUIREMENTS FOR A GUILTY PLEA TO BE ACCEPTED AS KNOWING, INTELLIGENT AND VOLUNTARY. FED. R. CRIM. P. 11. THESE REQUIREMENTS ARISE FROM CONSTITUTIONAL PRINCIPLES AND INCLUDE, INTER ALIA, THAT THE DEFENDANT UNDERSTANDS (1) THE NATURE OF EACH CHARGE TO WHICH THE DEFENDANT IS PLEADING, (2) ANY MAXIMUM POSSIBLE PENALTY, INCLUDING IMPRISONMENT, FINE, AND TERM OF SUPERVISED RELEASE AND (3) ANY MANDATORY MINIMUM PENALTY. SEE FED. R. CRIM. P. 11(b)(1)(G), (H) AND (I) (2003).

FED. R. CRIM. P. 11 IS BASED UPON CONSTITUTIONAL PRINCIPLES ENUNCIATED IN BOYKIN V. ALABAMA, 395 U.S. 238, 23 L.Ed. 2d 274 (1969) AND ITS PROGENY. UNDER BOYKIN, DUE PROCESS, AS ESTABLISHED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION, REQUIRES THAT A DEFENDANT'S GUILTY PLEA BE MADE VOLUNTARILY, INTELLIGENTLY AND UNDERSTANDINGLY. BOYKIN, 395 U.S. At 244, 23 L.Ed. 2d At 280.

BEFORE THE COURT ACCEPTS A PLEA OF GUILTY, THE COURT "MUST ADDRESS THE DEFENDANT PERSONALLY IN OPEN COURT AND INFORM THE DEFENDANT OF, AND DETERMINE IF THE DEFENDANT UNDERSTANDS, THE NATURE OF THE CHARGE AGAINST HIM, THE MANDATORY MINIMUM PENALTY, IF ANY, AND THE MAXIMUM POSSIBLE PENALTY PROVIDED BY LAW INCLUDING THE EFFECT OF ANY SUPERVISED RELEASE TERM", FED. R. CRIM. P. 11(b)(1)(G), (H) AND (I), AS BY "ENTERING A GUILTY PLEA, A DEFENDANT EFFECTIVELY WAIVES SEVERAL CONSTITUTIONAL RIGHTS, AND FOR THAT WAIVER TO BE VALID THE PLEA MUST AMOUNT TO A VOLUNTARY AND INTENTIONAL RELINQUISHMENT OR ABANDONMENT OF A KNOWN RIGHT OR PRIVILEGE," McCARTHY V. UNITED STATES, 394 U.S. 459, 466 (1969) (QUOTED IN UNITED STATES V. GRAY, No. 94-1298 (AUGUST 16, 1995 - 1st CIR.)), THUS, "RULE 11 WAS INTENDED TO ENSURE THAT A DEFENDANT WHO PLEADS GUILTY DOES SO WITH AN UNDERSTANDING OF THE NATURE OF THE CHARGE AND THE CONSEQUENCES OF THE PLEA." GRAY, 63 F.3d 57 (1st CIR. 1995).

HENCE, "THE LAW GOVERNING THE ACCEPTANCE OF A GUILTY PLEA UNDER FED. R. CRIM. P. 11 IS WELL ESTABLISHED, AS A PLEA CANNOT BE TRULY VOLUNTARY UNLESS THE DEFENDANT POSSESSES AN UNDERSTANDING OF THE LAW IN RELATION TO THE FACTS;" UNITED STATES V. FIELD, 39 F.3d 15 (1st CIR. 1994), AND THERE "MUST BE A FACTUAL BASIS FOR THE GUILTY PLEA." FED. R. CRIM. P. 11 (b)(3) (2003).

IN THE CASE AT BAR, THE DISTRICT COURT MISINFORMED DEFENDANT OF THE CHARGE AGAINST HIM, NAMELY, "POSSESSION OF A FIREARM BY CONVICTED FELON" UNDER 18 U.S.C. § 922(g)(1). IN ORDER TO BE CONVICTED "SECTION 922(g)(1) REQUIRES THE GOVERNMENT TO PROVE THAT A DEFENDANT (1) WAS PREVIOUSLY CONVICTED OF A CRIME PUNISHABLE BY AN IMPRISONMENT TERM IN EXCESS OF ONE YEAR, (2) KNOWINGLY POSSESSED A FIREARM AND (3) IN OR AFFECTING COMMERCE," UNITED STATES V. LEWIS, 40 F.3d 1325 (1st CIR. 1994), AND IT HAS BEEN CLEARLY ESTABLISHED THAT, A "DEFENDANT'S UNDERSTANDING OF THE CHARGES," IS ONE OF RULE 11'S CORE CONCERNS. UNITED STATES V. MEDINA-SILVERIO, 30 F.3d 1 (1st CIR. 1994).

SPECIFICALLY, DEFENDANT CONTENDS THE DISTRICT COURT FAILED TO ADEQUATELY APPRISE HIM OF THE "SECOND ELEMENT" OF POSSESSION OF A FIREARM BY CONVICTED FELON, NAMELY, "KNOWINGLY POSSESSED A FIREARM". WITH REGARD TO SAID "SECOND ELEMENT" OF THE OFFENSE, THE PROSECUTOR'S STATEMENT OF THE FACTS AND CONDUCT OF THE DEFENDANT WAS STATED AS FOLLOWS AT THE PLEA COLLOQUY:

> " COUNT-III, THE GUN CASE CHARGE, IS THAT ON OR ABOUT JULY 11TH, 2003, HERE IN THE DISTRICT OF RHODE ISLAND, THE DEFENDANT, HAVING BEEN CONVICTED OF A CRIME PUNISHABLE BY A TERM OF IMPRISONMENT FOR A TERM EXCEEDING ONE YEAR, THAT IS, HE HAD A FELONY CONVICTION, DID KNOWINGLY POSSESS IN AND AFFECTING COMMERCE FOUR FIREARMS. IN THIS CASE, IT'S SET FORTH IN THE INDICTMENT A SMITH AND WESSON .38, A BROWNING .9 MILLIMETER, ANOTHER BROWNING .9 MILLIMETER, AND A COLT PYTHON .357, AND THAT HE, IN THIS CASE, CONSTRUCTIVELY POSSESSED THOSE WEAPONS. . .

...Now, the elements are that he had been convicted of this felony; that he knowingly, that is, he knew what he was doing; possessed, that is, he had within the control of himself or a person working for himself, in this case, a person working for him. In and affecting commerce, that means the guns traveled across state lines at some point. Doesn't mean that he had to do it, but at some point that the guns in their existence they had come across a state line. That's in and affecting commerce...

...And that before all this happened on July 11th, he had previously been convicted of this felony."...
(See pages 14 and 15 of Defendant's "Change of Plea" Hearing transcript, dated October 1st, 2003 - attached herewith).

Here, Defendant argues that where he was charged with, constructively, possessing the four firearms in question, such a narrow statement given by the prosecutor with regard to Defendant's "knowledge and knowing possession of a firearm," without more, was insufficient and/or inadequate, and undermined his apprehension of the centerpiece element of said charge, namely, that "he knowingly and constructively possessed a firearm" by and through a person, allegedly, working for him.

It is clearly established on the record that the Defendant was not present with the person (co-defendant) allegedly working for him during the alleged drugs for guns transaction, neither did the Defendant receive, nor has he ever seen the four firearms in question, in order to obtain the knowledge required to know that, the instruments allegedly

possessed by the co-defendant was, in fact, a firearm. Further, it is clearly established on the record that the person (co-defendant) allegedly working for the defendant, neither inspected the alleged four firearms, nor has it been established that the co-defendant ever seen the supposed four firearms during the transaction, in order for him to have obtained the requisite knowledge that, what the undercover ATF-agent placed inside his backpack were, in fact, four firearms, operable and/or made to fire a bullet. (See T. p.23, Ln. 20-25 of the change of plea transcript - attached herewith).

In United States v. Freed, 401 U.S. 601, 607, 91 S.Ct. 1112, 1117, 28 L.Ed.2d 356 (1971), the U.S. Supreme Court explained it thus:

> As far as "intent" and "mens rea" are concerned, there are 'two answers' to defendant's assertions that they were not properly explained to him. The 'first' is that both were explained correctly to defendant. The Court stated, inter alia:
>
> > The government must prove that you knowingly received or possessed, and here you're charged with being in - possessing, or transported the firearm in question. And when we use the word knowingly, what the law means is that you were - that you acted voluntarily and deliberately, not by mistake or through inadvertence; in other words, that you voluntarily received or had in your possession the firearm in question.
>
> The 'second' reason is that in order to convict a defendant of this crime, being a felon in possession of

A FIREARM, THE ONLY KNOWLEDGE BY DEFENDANT REQUIRED TO BE PROVED IS THAT THE "INSTRUMENT POSSESSED WAS A FIREARM". SEE ID.

IN THE CASE AT BAR, DEFENDANT MAINTAINS THAT "AS AN ELEMENT OF CRIMINAL RESPONSIBILITY," AS EXPLAINED IN FREED, SUPRA, THE DISTRICT COURT WAS REQUIRED TO ADEQUATELY APPRISE HIM OF THE "MENS REA" ELEMENT OF SAID CHARGE, NAMELY, THAT HE, HIMSELF "KNEW THAT THE INTRUMENTS POSSESSED BY THE PERSON (CO-DEFENDANT) ALLEGEDLY WORKING FOR HIM WERE, IN FACT, FOUR FIREARMS." SEE FREED, SUPRA.

HERE, DEFENDANT ASSERTS THAT SUCH A MISSTATEMENT OF THE "SECOND ELEMENT," GIVEN BY THE PROSECUTOR ON SAID CHARGE, UNDERMINED HIS UNDERSTANDING OF THE LAW IN RELATION TO THE FACTS, AND HAD HE BEEN PROPERLY APPRISED THAT IN ORDER FOR HIM TO BE CONVICTED OF THIS CRIME, BEING A FELON IN POSSESSION OF A FIREARM, THE GOVERNMENT MUST PROVE THAT HE KNEW THE INSTRUMENTS POSSESSED BY THE CO-DEFENDANT WERE FIREARMS, HE WOULD NOT HAVE PLEADED GUILTY TO SAID GUN CHARGE, i.e., COUNT-III OF THE ABOVE-NUMBERED INDICTMENT.

THUS, DEFENDANT ARGUES THAT BECAUSE OF THE WAY THE DISTRICT COURT AND THE PROSECUTOR EXPLAINED THE ELEMENTS OF THE GUN CHARGE, HE DID NOT "POSSESS AN UNDERSTANDING OF THE TRUE NATURE OF THE CHARGE" AND/OR WAS NOT GIVEN "REAL NOTICE OF THE CHARGED OFFENSE"; WHICH "IMPLICATES A VIOLATION OF ONE OF 'RULE 11'S CORE CONCERNS,' AND MANDATES THAT THE GUILTY PLEA BE SET ASIDE." SEE UNITED STATES V. ALLARD, 926 F.2d 1237, 1244-45 (1st CIR. 1991) (IDENTIFYING RULE 11'S CORE CONCERNS), AS A GUILTY PLEA "CANNOT BE TRULY VOLUNTARY UNLESS THE DEFENDANT POSSESSES AN UNDERSTANDING OF THE LAW IN RELATION TO THE FACTS." UNITED STATES V.

FIELD, 39 F.3d 15 (1st CIR. 1994).

B. THE DISTRICT COURT'S INCORRECT STATEMENTS OF THE DIRECT CONSEQUENCES OF DEFENDANT'S GUILTY PLEA VIOLATED THE EXPRESS PROVISIONS OF FED. R. CRIM. P. 11

FED. R. CRIM. P. 11 PRESCRIBES NUMEROUS STEPS THAT MUST BE FOLLOWED BEFORE A DEFENDANT IS ALLOWED TO PLEAD GUILTY. BEFORE THE COURT ACCEPTS A PLEA OF GUILTY, THE COURT MUST ADDRESS THE DEFENDANT PERSONALLY IN OPEN COURT AND INFORM THE DEFENDANT OF, AND DETERMINE IF THE DEFENDANT UNDERSTANDS, INTER ALIA, THE MANDATORY MINIMUM PENALTY PROVIDED BY LAW, IF ANY, AND THE MAXIMUM POSSIBLE PENALTY PROVIDED BY LAW INCLUDING THE EFFECT OF ANY SUPERVISED RELEASE TERM. SEE FED. R. CRIM. P. 11 (b)(1)(H) AND (I). SEE ALSO RAINERI, 42 F.3d 36 (1st CIR. 1994).

IN THE CASE AT BAR, DEFENDANT ASSERTS THAT THE PLEA AGREEMENT ERRONEOUSLY RECITED THAT COUNT-III, THE FIREARMS CHARGE, EXPOSED HIM TO "A MAXIMUM SENTENCE OF TEN YEARS IMPRISONMENT, A FINE OF $250,000, AND A TERM OF SUPERVISED RELEASE FROM THREE YEARS AND UP TO LIFE." BUT BECAUSE COUNT-III CHARGED DEFENDANT WITH VIOLATING 18 U.S.C. § 922(g)(1), BEING A FELON IN POSSESSION OF A FIREARM, HIS TRIPLE FELONY RECORD MEANT THAT THE OFFENSE CARRIED A MINIMUM 15-YEAR MANDATORY SENTENCE UNDER 18 U.S.C. § 924(e)(1) AND AN INCREASED FINE, AS 18 U.S.C. § 924 GOVERNS FINES AND IMPRISONMENT FOR VIOLATIONS OF § 922(g)(1). SEE UNITED STATES v. LANOUE, 137 F.3d 656 (1st CIR. 1998)("CONVICTION UNDER § 922(g)(1) CARRIES A MINIMUM 15-YEAR MANDATORY SENTENCE"). Id., AT 660. HOWEVER, THESE ERRORS WERE REPEATED IN THE CHANGE-OF-PLEA COLLOQUY. DURING THAT EXCHANGE,

the District Court told the Defendant that, if he pled guilty, he would be exposed to the "maximum penalty of ten years imprisonment with respect to Count-III as well as the additional penalties regarding fines and the terms of supervised release."

In addition, the Government and the District Court incorrectly advised defendant that he faced "a fine of $250,000 and a term of supervised release from 'three years and up to life.'" However, the guideline provisions called for a term of supervised release of "two to three years." (See T. p. 6, Ln. 15-18 of the change-of-plea transcript, with T. p. 8, Ln. 10-19, and T. p. 34, Ln. 22-25 of the sentencing transcript).

Here, defendant argues that because he was subject to a mandatory minimum of 15-years imprisonment as well as the additional penalties regarding fines and terms of supervised release under 18 U.S.C. § 924(e)(1), the Government's and the District Court's statements made to him at the change-of-plea colloquy were inaccurate and/or a misstatement of the law, and he pleaded guilty based on that erroneous information.

Therefore, defendant maintains that, in light of the misrepresentations made to him in connection with his guilty plea, the District Court violated the express provisions of Rule 11, namely, "the defendant's knowledge of the consequences of the guilty plea", which has been identified as one of the three "core concerns" of Rule 11, and his guilty plea must be set aside.

"We have distinguished between 'technical' violations of Rule 11 and violations of the Rule's 'core concerns,' and held that a violation that implicates one of the Rule's core concerns mandates that the plea be set aside." United States v. Medina-Silverio, 30 F.3d 1 (1st Cir. 1994).

IN *UNITED STATES V. COTAL-CRESPO*, 47 F.3d 1 (1st CIR. 1995), THE COURT OF APPEALS EXPLAINED THE CORE CONCERNS OF RULE 11 THUS:

> "IN DETERMINING WHETHER THERE HAS BEEN A VIOLATION OF ONE OF THE CORE CONCERNS OF RULE 11, WE REVIEW THE TOTALITY OF THE CIRCUMSTANCES SURROUNDING THE RULE 11 HEARING AT WHICH THE DEFENDANT PLED GUILTY." *Id.* AT 4. WE HAVE EXPLAINED THAT "WHAT IS CRITICAL IS THE SUBSTANCE OF WHAT WAS COMMUNICATED BY THE TRIAL COURT, AND WHAT SHOULD REASONABLY HAVE BEEN UNDERSTOOD BY THE DEFENDANT, RATHER THAN THE FORM OF THE COMMUNICATION." *Id.* AT 4-5.

IN THE INSTANT CASE, DEFENDANT WAS WRONGLY TOLD AT THE RULE 11 HEARING THAT THE MAXIMUM PENALTY FOR HIS CRIME WITH RESPECT TO COUNT-III WAS TEN YEARS, WHEN IN FACT THE MANDATORY MINIMUM PENALTY WAS 15 YEARS. SUBSEQUENTLY, THE DISTRICT COURT IMPOSED A SENTENCE OF "9 YEARS AND 7-MONTHS"; A SENTENCE DEFENDANT FAIRLY EXPECTED WOULD NOT LIKELY BE IMPOSED, GIVEN HIS PRIOR CRIMINAL HISTORY LEVEL, THE FACTS SURROUNDING THE CASE, AND THE REPRESENTATIONS MADE TO HIM BY TRIAL COUNSEL WITH RESPECT TO WHAT THE GUIDELINES RANGE WOULD BE IN THIS CASE.

THUS, DEFENDANT ARGUES THAT THE DISTRICT COURT'S MISINFORMATION PREJUDICED HIM, IN THAT THE ERROR INFLUENCED HIS DECISION TO PLEAD GUILTY, AND IF HE HAD BEEN CORRECTLY TOLD THAT A FAR LARGER PENALTY THREATENED HIM, HE WOULD NOT HAVE PLEADED GUILTY, IN WHICH THE ULTIMATE OUTCOME WOULD HAVE BEEN DIFFERENT IF THE ERROR HAD NOT BEEN COMMITTED. FURTHER, DEFENDANT CONTENDS THAT BECAUSE HE WAS NOT GIVEN THE CORRECT STATEMENT OF "WHAT THE MAXIMUM PUNISHMENT AND ADDITIONAL PENALTIES COULD BE," THE DISTRICT COURT'S ERROR AFFECTED HIS "SUBSTANTIAL RIGHTS" IN THAT,

HE HAD AN ABSOLUTE RIGHT TO RECEIVE AND/OR TO BE INFORMED OF THE CORRECT STATEMENT OF THE LAW IN RELATION TO THE FACTS, IN ORDER FOR HIM TO POSSESS AN UNDERSTANDING OF THE TRUE CONSEQUENCES OF THE PLEA BEFORE PLEADING GUILTY.

IN UNITED STATES V. GRAY, 63 F.3d 57 (1st CIR. 1995), THE COURT OF APPEALS HELD: "GRAY'S SIGNATURE ON THE PLEA AGREEMENT IS THEREFORE INSUFFICIENT INDICATION OF HIS ACTUAL UNDERSTANDING OF THE CONSEQUENCES OF HIS PLEA, AND THUS CANNOT CURE OR OBVIATE THE COURT'S MISTAKEN EXPLANATION OF THE APPLICABLE SENTENCE"... ALTHOUGH THE COURT'S ERROR IS NOT A "TOTAL FAILURE TO ADDRESS" ONE OF RULE 11'S CORE CONCERNS, WE CANNOT SAY WITH ANY CERTAINTY THAT GRAY'S REASONABLE MISUNDERSTANDING OF HIS SENTENCE DID NOT AFFECT HIS SUBSTANTIAL RIGHTS WITHIN THE MEANING OF RULE 11. SEE Id.

"WHILE THE HARMLESS ERROR RULE EXCUSES MINOR AND TECHNICAL VIOLATIONS, IT IS NOT INTENDED EFFECTIVELY TO NULLIFY RULE 11'S EXPRESS MANDATES OR SAFEGUARDS," UNITED STATES V. MARTINEZ-MOLINA, 64 F.3d 719, 734 (1st CIR. 1995), BECAUSE THE "STRICTURES OF RULE 11 WERE CALCULATED TO INSURE THE VOLUNTARY AND INTELLIGENT CHARACTER OF THE PLEA." UNITED STATES V. PARRA-IBANEZ, 936 F.2d 588, 593 (1st CIR. 1991). SEE ALSO UNITED STATES V. RUIZ-DEL VALLE, 8 F.3d 98 (1st CIR. 1993) (DEFENDANT WAS ALLOWED TO WITHDRAW HER PLEA OF GUILTY BECAUSE SHE DID NOT UNDERSTAND THE NATURE OF THE CHARGES AGAINST HER). Id. At 103.

WHEREFORE, DEFENDANT MAINTAINS THAT GIVEN THE ERRONEOUS ADVICE COMMUNICATED TO HIM BY THE DISTRICT COURT AT THE CHANGE-OF-PLEA COLLOQUY, THAT HIS GUILTY PLEA SHOULD BE VACATED AND THE CHARGE DISMISSED WITH PREJUDICE.

RESPECTFULLY SUBMITTED THIS 16th DAY of February, 2005. /S/ Luis Oliveira

*DEFENDANT - PRO SE*

* NOTE: THIS "MEMORANDUM OF LAW" IS SUBJECT to AMENDMENT *

## * CERTIFICATION *

I HEREBY CERTIFY THAT I CAUSED A COPY OF THE SAID "MEMORANDUM of LAW" to BE DELIVERED to ZECHARIAH CHAFEE, Asst. UNITED STATES ATTORNEY, BY PLACING A COPY of SAME IN THE U.S. MAIL, POSTAGE PRE-PAID, ADDRESSED AS follows:

ZECHARIAH CHAFEE
U.S. ATTORNEY'S OFFICE
50 KENNEDY PLAZA
PROVIDENCE, R.I. 02903

THIS 16th DAY of February, 2005.
/S/ Luis Oliveira
*DEFENDANT - PRO SE*

Island, he did knowingly and intentionally distribute a mixture and substance containing a detectable amount of cocaine or in this case he aided and abetted in the distribution of cocaine.

In that charge, the elements are that the Defendant knowingly, that is, he knew what he was doing; intentionally, he intended to do what he was doing; aided and abetted, that is, he helped knowing what was going on, knowing that a crime was to be committed, was going to be committed. He helped commit that crime by his actions, knowing that he was doing that. And that in the course of that crime in this case, cocaine was distributed. That means it was passed from one person to another intentionally, and that it was indeed cocaine. That cocaine, a Schedule II controlled substance.

Count III, the gun case charge, is that on or about July 11th, 2003, here in the District of Rhode Island, the Defendant, having been convicted of a crime punishable by a term of imprisonment for a term exceeding one year, that is, he had a felony conviction, did knowingly possess in and affecting commerce four firearms. In this case, it's set forth in the indictment a Smith & Wesson

** PAGE 14 OF THE CHANGE OF PLEA TRANSCRIPT **
* HEARING DATE: 1st OCTOBER 2003 *

.38, a Browning .9 millimeter, another Browning .9 millimeter, and a Colt Python .357, and that he, in this case, constructively possessed those weapons.

Now, the elements are that he had been convicted of this felony; that he knowingly, that is, he knew what he was doing; possessed, that is, he had within the control of himself or a person working for himself, in this case, a person working for him. In and affecting commerce, that means the guns traveled across state lines at some point. Doesn't mean that he had to do it, but at some point that the guns in their existence they had come across a state line. That's in and affecting commerce.

And that before all this happened on July 11th, he had previously been convicted of this felony.

Now, the evidence is -- what would be proved at trial is that this Defendant knew a man named Allan Bartelson from Vermont, and that they had had a long-time business relationship. And in the course of that relationship, they had spoken many times on the phone. They had met many times. The business involved the trading by Bartelson of

At that time, BarteTson made a phone call to Olivera and told him that the agent was -- he didn't refer to her as the agent, but this woman that he was with was reluctant to give the guns to his kid.

At that point, Bartelson hands the phone to Camera, who has a brief conversation with Olivera, after which he handed the phone back and then Lacourse tells Camera that the guns her boyfriend brought were 9's and that she wanted to talk to Louie to tell him that her boyfriend could get him .40 and .45 caliber guns.

And Camera says -- and then Camera says, "Well, that's what he wants right now. If that's what he wanted, then that's what he wants."

And Camera says -- he was getting anxious, and he said he wanted to do the deal. "I got this big thing in my pocket. Let's just make this play."

And eventually, to cut to the chase here, they agreed to -- Camera tells the agent, "Look, Louie is not coming. Let's do this thing." She agrees to do it. She puts the guns in Camera's backpack, and he, Camera, sticks the cocaine in Bartleson's pocket.

** PAGE 23 OF THE CHANGE OF PLEA TRANSCRIPT **
HEARING DATE: 1st OCTOBER 2003 *

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br>VS.<br>LUIS OLIVERA | CRIMINAL ACTION<br>NO. 03 - 708 |

# APPENDIX
# OF
# ADDITIONAL SUPPORTING
# FACTS

the conspiracy to distribute cocaine.

* For purposes of determining the offense level, the Government agrees to recommend a two-level reduction in the offense level for acceptance of responsibility.

The Government is free to recommend any combination of supervised release, fines and restitution which it deems appropriate.

* The maximum statutory penalties for (each count) of the indictment for which the Defendant is pleading are as follows: 30 years imprisonment, a fine of up to $2 million, a term of supervised release from three years and up to life and a mandatory special assessment of $100.

On Count III, the firearms charge, the maximum is ten years imprisonment, a fine of $250,0000, a term of supervised release from three years and up to life, and a mandatory special assessment of $100.

Check Min Sent

**BY THE COURT**: (Continuing)

Q. Mr. Olivera, did you listen carefully to what Mr. Chafee outlined as the terms of the plea agreement?

A. Yes.

Q. Do you agree those, in fact, are the terms of the

** PAGE 6 of CHANGE of PLEA TRANSCRIPT **
* HEARING DATE: 1st OCTOBER 2003 *

Q. Now, you understand that the charges to which you're pleading guilty are felony offenses. If I accept that plea, you'll be adjudged guilty of the offenses and that may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of a firearm. Do you understand all that?

A. Yes.

Q. Now, Mr. Chafee outlined the maximum statutory penalties in this case a moment ago. The maximum penalties include 30 years imprisonment with respect to Count II; ten years of imprisonment with respect to Count III as well as the additional penalties regarding fines and the terms of supervised release and special assessments.

Do you understand that those are the maximum penalties that may apply in your case?

A. Yes.

Q. Now, you've heard the term "supervised release" used here today. You understand what supervised release is?

A. Yes.

Q. Can you tell me in your own words what you think it is?

** PAGE 8 of CHANGE of PLEA TRANSCRIPT **
* HEARING DATE: 1st OCTOBER 2003 *

statements.

So the long and the short of it is the evidence, in the Court's view, is overwhelming that the firearm was possessed in connection with two separate felony offenses as I outlined above. And therefore, the four-level adjustment under the guideline section 2K2.1(b)5 is appropriate.

Now, having said that, the adjusted offense level in this case is, therefore, a 26, and the criminal history category for the Defendant is a 4.

Do the parties agree that the offense level is a 26, and the criminal history category is, in fact, a 4?

MR. ROY: I agree, your Honor, that the proper offense level is 26.

THE COURT: Government?

MR. CHAFEE: Yes, your Honor.

THE COURT: All right. So I'll now hear from both parties with respect to the appropriate sentence in this case.

I'll note that the guideline provisions call for 92- to 115-month sentence of incarceration and supervised release of two to three years.

** PAGE 34 of SENTENCING TRANSCRIPT **
* HEARING DATE: 19 FEBRUARY 2004 *

3

THE COURT: This is the matter of the United States versus Olivera.

Would counsel please identify themselves for the record.

MR. CHAFEE: Zechariah Chafee for the Government.

* MR. ROY: Edward C. Roy, standby counsel.

* THE COURT: Okay. Mr. Olivera, you are still essentially representing yourself in this matter. I've asked Mr. Roy to remain as standby counsel in the event you need to ask him some questions or seek his advice for any reason.

What's before the Court is the Defendant's motion to vacate his plea, which has been filed pro se by the Defendant. There's also a motion before me for discovery of grand jury proceedings. I want to take up the motion to vacate first.

* Last night I got a letter from Mr. Chafee, who has been the Assistant U.S. Attorney on this matter.

Have you had an opportunity to review this letter, Mr. Olivera?

THE DEFENDANT: Yes.

THE COURT: Okay. Do you feel you understand what he is saying in this letter?

** PAGE 3 OF MOTION TO VACATE AND SENTENCING TRANSCRIPT **
* HEARING DATE: 13 FEBRUARY 2004 *

45

(Government's Exhibit 2 was marked full.)

Q. Did you participate in the interview of Allan Bartelson after he was arrested with the cocaine on June 18th, 2003? Were you a participant in that interview or not?

A. No.

Q. Was he interviewed by the ATF agents?

A. Yes.

MR. CHAFEE: I have no further questions, your Honor, of this witness.

THE COURT: All right. Mr. Olivera, do you wish to cross-examine this witness?

MR. ROY: Judge, the Defendant has, given this witness' technical testimony, he's asked me to ask some questions of the witness if that's all right with the Court.

THE COURT: I didn't understand the first part of what you said.

MR. ROY: Given this witness' technical testimony, Mr. Olivera asked that I be allowed to ask the questions rather than him. It might be faster, Judge.

THE COURT: Sure. This floating in and out of representation is a bit problematical. And I don't quite know -- Mr. Chafee, do you have any

** PAGE 45 OF MOTION TO VACATE AND SENTENCING TRANSCRIPT **
* HEARING DATE: 13 FEBRUARY 2004 *

objection to that?

MR. CHAFEE: I don't. I knew this was going to happen when we got down to questioning a witness, that this Defendant could not do the job. And I think, it's not my decision, but I think Mr. Roy ought to be brought back and entered as counsel.

THE COURT: That's the Defendant's decision.

And Mr. Olivera, would you like Mr. Roy to represent you during this hearing?

THE DEFENDANT: Yes, your Honor.

THE COURT: I think that's a good decision. And so why don't we have Mr. Roy fully represent you in this hearing, and I think it will be better for you and better for the process. So go ahead.

MR. ROY: Just briefly, Judge, I'm more than happy to do that, but it may be that I could possibly need more time depending on what happens with the witnesses.

THE COURT: I understand.

MR. ROY: So I'll bring it to the Court's attention, and I may not, but I just wanted to bring it to the Court's attention.

4

THE DEFENDANT: Yes.

THE COURT: All right. Now, Mr. Chafee is, essentially, because of this error that he has discovered and disclosed, which was both in the plea agreement and stated at the plea colloquy, he has essentially assented to or joined in the motion to vacate Count II. Now, Count II is the distribution of cocaine count.

Although there was an error with respect to Count III, Mr. Chafee is not joining in any motion of yours to vacate Count III. You understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Okay. And that's the firearm count, right?

THE DEFENDANT: Yes.

THE COURT: All right. So given the representation made in the letter and Mr. Chafee's joining in the motion to vacate the plea on Count II, I am going to vacate your plea of guilty on Count II, if that's what you wish to do. Is that what you wish to do?

THE DEFENDANT: Yes.

THE COURT: Okay. And have you thought that through carefully?

** PAGE 4 of MOTION TO VACATE AND SENTENCING **
* HEARING DATE: 13 FEBRUARY 2004 *

5

THE DEFENDANT: Yes, I did.

*THE COURT: Okay. Then I'm going to order that the Defendant's plea of guilty with respect to Count II be vacated.

Now, that leaves us -- Mr. Chafee, do you want to be heard on that?

MR. CHAFEE: No, your Honor.

THE COURT: All right. Now, what that leaves us with is Count III. And you have a motion pending to vacate your plea with respect to Count III.

And I will say that I researched the issue last night, whether the situation with respect to Count II would require the vacation of Count III, and I don't believe that it does. And I cite the case of **United States versus Perez-Carrera**, which is 243 F.3d 42, 2001 case, which I think makes this clear.

So I'm prepared to hear you on your motion to vacate Count III, Mr. Olivera.

THE DEFENDANT: Your Honor, on Count III, neither the prosecutor nor the Court explained to me in order for me to be convicted of a felony, found guilty of being a felon in possession of a firearm, the Government had to prove that I had

** PAGE 5 OF MOTION TO VACATE AND SENTENCING TRANSCRIPT **
* HEARING DATE: 13 FEBRUARY 2004 *

an ATF undercover agent, Alan Bartelson, and Luis Olivera. We had planned to meet with Luis Olivera in Providence, Rhode Island, to conduct an undercover exchange of cocaine for firearms.

Q. Okay. Did the ATF undercover agent ride down or get into a car in Providence with Bartelson?

A. Yes. Our undercover agent was in a vehicle with Mr. Bartelson. They were at the Stop & Shop on Branch Avenue, the corner of Branch Avenue and West River Street in Providence, Rhode Island.

Q. Did the undercover have handguns in her possession?

A. Yes, she did. She had four ATF owned handguns.

Q. That she had brought down from Vermont?

A. Yes.

Q. Did Bartelson make a call at that time to Luis Olivera?

A. Yes, he did. Mr. Bartelson contacted Olivera by telephone to let Mr. Olivera know that he was in Providence and he did have the firearms they had discussed, however, he did not have the cash but he brought down two additional firearms.

Q. Did he say something about his car?

A. Yes. He told Mr. Olivera that his vehicle

63

bringing guns down?
A. Yeah. Probably September or October I did.
Q. And how many times a month did you bring guns down to Louie to trade for cocaine?
A. Same thing. About once a month. But I'd come down a couple of times a month.
Q. Okay. So one time a month it would be a gun?
A. Yeah.
Q. Another time a month it would be something else?
A. Yeah. Money.
Q. Money. All right. Now, let's call your attention to -- well, when you came down, did you come down by car or some other means?
A. Car.
Q. This was coming down from Vermont where you lived; is that right?
A. Yes.
Q. When you were coming down, did you come down alone most of the time or with somebody else?
A. No. Somebody would usually drive me.
Q. Somebody would usually drive you; is that right?
A. Yes.
Q. Okay. Calling your attention to June 18th, 2003, did you come down on that night, the night of June 17th into the early morning of June 18th?

**PAGE 63 OF MOTION TO VACATE AND SENTENCING TRANSCRIPT**
* HEARING DATE: 13 FEBRUARY 2004 *

Did you come down on that night?
A. Yes.
Q. Who did you come down with?
A. Jennifer Watson.
Q. And did she drive, or did you drive?
A. She did.
Q. What did you bring down that night to trade with Louie?
A. A nine millimeter.
Q. Is that a firearm?
A. Yes.
Q. How had you obtained that firearm?
A. I got it from one of my friends up in Vermont.
Q. And you're familiar with firearms?
A. Yes.
Q. Was that a firearm?
A. Yeah.
Q. And did you bring any cash?
A. Yes.
Q. How much?
A. 1600.
Q. $1600?
A. Yes.
Q. Had you been in touch with Louie before you started down there to let him know you were coming

THE COURT: If we get to that point, you make your request and we'll deal with it.

MR. ROY: Thank you, Judge.

CROSS-EXAMINATION BY MR. ROY

Q. Good afternoon, Detective. Did you participate at all in the interview of the informant who went down to Providence, Rhode Island with Mr. Bartelson?

A. No.

Q. Do you know who she is?

A. I've seen her, but I've never spoken with her.

Q. In a statement that the prosecution gave us in this case, a name of Jennifer Watson was listed. Is that the informant?

MR. CHAFEE: I object to revealing the informant's name. I don't believe that's relevant to this case, to the matters under issue, at issue. I just think it's extraneous. And in a balancing test, I don't see that there's any weight on the side of revealing the name.

MR. ROY: It's already been disclosed in a statement. I'll be happy to show it to the Court.

THE COURT: I think that would be good. Let me see the statement so I can evaluate whether this is a real issue.

MR. ROY: May I approach, Mr. Chafee, Judge. Mark it first as I guess Defendant's next in line.

THE COURT: No. This will be Defendant's A. We're in the sentencing hearing now. That was A and B with respect to the motion to vacate, the hearing on that.

MR. CHAFEE: I withdraw my objection.

THE COURT: All right.

MR. CHAFEE: We have an AUSA from Vermont here who I just spoke to.

THE COURT: Okay. The objection is withdrawn. The document will be admitted in full as Defendant's A.

(Defendant's Exhibit A was marked full.)

THE COURT: Is this an extra copy or is this your copy?

MR. ROY: That's my copy. I wasn't prepared, Judge.

THE COURT: I understand. You move forward with your examination, and I'll get my copies later.

**BY MR. ROY**: (Continuing)

Q. I'm sorry for the delay, Detective. Was Jennifer Watson the informant?

** PAGE 48 of MOTION TO VACATE AND SENTENCING TRANSCRIPT **
* HEARING DATE: 13 FEBRUARY 2004 *

1:03 M-109A

AFFIDAVIT

I Michael J. West, state under oath:

1. I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives and have been for about 11 years.

2. This affidavit is made in support of an application for a Search Warrant for 81 Hawkins Street, Providence, Rhode Island, the left hand unit of the duplex as one faces the front of the building on Hawkins Street, marked with the number 81.

3. The following information was obtained during my June 25, 2003 interview of a confidential informant (CI) who is working with the Northern Vermont Drug Task Force.

4. The CI told me that on the night of June 17-18 2003 the CI accompanied Alan Bartelson in a car from Vermont as he drove to a house in Providence (which the CI later pointed out to me)to buy cocaine. The CI was told by Bartelson that he would pay the CI $200 for driving him down to Providence and back. The two of them were alone together in the car. During the drive down Bartelson showed the CI a wad of cash that he said was for buying the cocaine. He told the CI that he was going to meet "Louie."

5. When the two of them reached 81 Hawkins Street in Providence, RI, Alan Bartelson directed the CI to drive up to the driveway at the rear of the house. Bartelson got out of the car and went to the rear door of 81 Hawkins Street which was on the right hand as one faced the back of the house. In a short time

** PAGE 1 of AFFIDAVIT of ATF-AGENT, MICHAEL J. WEST **
* SWORN DATE: 11 JULY 2003 *

but they do talk about "If Count 28 had been dismissed with prejudice, we would summarily reject Raineri's argument as a rather mechanical claim that he did not get what he had bargained for." The count -- anyway, it goes on.

THE COURT: Right. I read that. I'm not sure I understand how that -- I guess what you're saying is if you dismiss Count II with prejudice in this case that there can be no claim that somehow anything related to Count II contributed to or undermined the voluntariness of the plea with respect to Count III.

MR. CHAFEE: I guess so. I'm going to move ahead. I think I cleared it up in my own mind. I think what your Honor says, he wants finality, your Honor wants finality before he sentences, I want to get this thing sentenced.

* I'm moving to dismiss Counts I and II with prejudice. I'd like to move now to the sentencing hearing.

There is an issue as to whether there should a four-level increase under guideline 2K2.1(b)(5) (RESEARCH IT).

THE COURT: Okay. Well, Mr. Olivera, you understand what's going on here?

** PAGE 33 of MOTION TO VACATE AND SENTENCING TRANSCRIPT **
* HEARING DATE: 13 FEBRUARY 2004 *

THE COURT: I agree. I don't think we need to go much further. I think this witness said he doesn't know if there's a statement, isn't that correct?

MR. ROY: I'm just trying to find out who the custodian might be, Judge, because I've been thrown into this role to represent this man, and I have to do an effective job, Judge.

THE COURT: I understand. But this hearing is going to take more than this afternoon. So this witness doesn't know if she gave a statement.** You can take up the issue of whether there is a statement or not with Mr. Chafee after we adjourn for the day. And the two of you can decide whether that's -- if there is a statement, if it's a Brady material that should be turned over. And if you need -- if we need to have an argument about that, we can have that on another day.** I don't think Mr. Chafee is going to hide the ball with respect to that issue.

MR. ROY: I'm not suggesting that, your Honor.

THE COURT: I know you're not.

**BY MR. ROY**: (Continuing)

Q. So you were not present when Mr. Bartelson was

** PAGE 52 OF MOTION TO VACATE AND SENTENCING TRANSCRIPT **
* HEARING DATE: 13 FEBRUARY 2004 *

23

there were no drugs, nothing found in that house. There's no proof. There's no paper, not even ID. Nothing that I lived at 81 Hawkins Street.

And for the timing of the motion, I got paperwork right here like since November, before my presentence report came in, I was telling Mr. Roy to vacate my plea based on other information I had, but he wouldn't. That's when I had to go and file my own plea, and it took me all that time because he wouldn't do it. He told me I didn't have a good reason. I even got a letter from him right here telling me that the prosecutor -- if I try to vacate my plea and if I do go to trial, he's going to use them charges against me at my sentencing, something he told me he wouldn't do if I plead out, which he's doing it today.

He told me if I plead out he's not going to use prior deals with Bartelson at my trial, at my sentencing.

THE COURT: There's nothing unusual about that.

THE DEFENDANT: Yeah, but that's what he told me at my sentencing, that, oh, he won't use that. He won't use that, but, yes, now he is. And I got a letter from him saying that he's going

** PAGE 23 OF MOTION TO VACATE AND SENTENCING TRANSCRIPT **
* HEARING DATE: 13 FEBRUARY 2004 *

FEDERAL DEFENDER OFFICE
DISTRICT OF RHODE ISLAND
10 WEYBOSSET STREET, 3RD FLOOR
PROVIDENCE, RHODE ISLAND 02903

TELEPHONE: 401-528-4281
(FAX) 401-528-4285

November 13, 2003

Luis Oliveira
Inmate
Adult Correctional Institutions
Intake Service Center
Cranston, RI 02920

**RE: Request to vacate plea**

Dear Mr. Olivera:

Yesterday, November 12, 2003, from your girlfriend, Dorothy Rodriguez, I learned that you wanted to vacate your plea of guilty. I have no idea why you want to do this. You have provided me with no basis to file a motion to vacate your plea. You should be aware that the Court will not just vacate a plea simply because a defendant has second thoughts. In addition, based upon all the evidence, you will have a very difficult time winning a trial. I do not feel that it is worthwhile to file a motion to vacate a plea of guilty unless you have a valid reason, such as your claim of innocence. Unless you can point me to a valid reason, I do not feel that it is worthwhile to file such a motion.

In addition, you never provided me with a letter of acceptance of responsibility as we discussed. The Pre-Sentence Report is due to be completed tomorrow. You will not be receiving your acceptance reduction of two levels because you have not yet provided a written acceptance. I will be out next week with you to review the PSR, if you decide to provide a letter of acceptance, I believe that you will be able to gain those points back. If, however, you seek to have your plea vacated, you will not receive those points reduced.

Another factor that weighs against your having your plea vacated is the late timing. You have waited until two days before the Pre-Sentence Report is due to vacate your plea. The timing certainly does not favor your successfully having your plea vacated.

Very truly yours,

EDWARD C. ROY, ESQUIRE
ECR/slc

FEDERAL DEFENDER OFFICE
DISTRICT OF RHODE ISLAND
10 WEYBOSSET STREET, 3RD FLOOR
PROVIDENCE, RHODE ISLAND 02903

TELEPHONE: 401-528-428
(FAX) 401-528-4285

November 20, 2003

Luis Olivera
Inmate
Adult Correctional Institutions
Intake Service Center
Cranston, RI 02920

**RE: United States v. Luis Olivera**

Mr. Olivera:

I am enclosing a copy of objections to the Pre-Sentence Report that are being filed on your behalf. In addition, you have not yet submitted a letter accepting responsibility for the charges to which you pled guilty. If you attempt to vacate your guilty plea, you will probably not be able to have your sentence reduced for acceptance of responsibility. If you send in a letter of acceptance, you can receive two points off of your offense level.

As of this time, you have not provided me with a valid reason for filing a motion to vacate your guilty plea. If you wish to try and have your plea vacated, you need to have a valid reason and claim your innocence. If your plea is vacated, you must then go to trial. Based upon the evidence against you, including your own statements, fingerprints on the drugs and the taped telephone calls, it would be very unlikely that you could win a trial. If you go to trial, and you are convicted, the prosecutor has said that he would try to use at your sentencing evidence of the prior drug and firearm sales with Alan Bartelson. You should be aware that at a federal court sentencing hearing, proof need only be by a preponderance of the evidence, not beyond a reasonable doubt, as with a finding of guilt. In other words, trying to vacate your plea has a number of very serious risks, including going to jail for a much longer period of time.

Very truly yours,

EDWARD C. ROY, ESQUIRE
ASSISTANT FEDERAL PUBLIC DEFENDER

ECR/slc

FEDERAL DEFENDER OFFICE
DISTRICT OF RHODE ISLAND
10 WEYBOSSET STREET, 3RD FLOOR
PROVIDENCE, RHODE ISLAND 02903

September 3, 2003

Luis Olivera
Inmate
Intake Service Center
Adult Correctional Institution
Cranston, RI 02920

Dear Luis:

After we met yesterday, I took another look at your case file. I decided to do this because you stated that you felt that you wanted to go to trial in your case. After reviewing the discovery in your case and the indictment, my opinion is that it would be very difficult to win a trial.

In the indictment you you are charged with three counts. Count One charges you with a charge of conspiracy to distribute cocaine. Count Two charges you with distributing cocaine. Finally, Count Three charges you with being a felon in possession of four handguns.

A conspiracy is an agreement between two or more people to violate the law. In your case, the evidence is not favorable to you. The police found your fingerprint on the bag which contained the cocaine. Prior to Robert Camera delivering the cocaine, you had some conversation with Alan Bartelson, the ATF's informant. Some of these calls were taped and we are awaiting copies. In addition, Bartelson is available to testify that he had prior dealings with you in which he traded handguns for cocaine. The surveillance tapes show that you and Camera met prior to Camera going to meet the ATF informant. Finally, you gave a statement to the police after being arrested. According to the file, you were given your Miranda warnings prior to giving the statement. Although the statement is not in writing, a judge will most likely allow the jury to hear the statement by the ATF Agent testifying as to what you said. Your own statement is sufficient to convict you of conspiracy with Camera. You stated that you made a phone call to obtain the cocaine for Camera. Again, your fingerprint is on the bag in which the cocaine was found.

He lied

In the delivery charge, Count Two, the government claims that you aided and abetted, or assisted, in the delivery. If a jury believed that you made the call and acted as the middleman for the deal with Camera and Al, that would be more than enough to convict you of the charge.

MAKE COPY



Luis Olivera
September 3, 2003
Page two, continued

The final charge is the charge of being a felon in possession. Although you did not in fact hold the guns in your hand, you could still be convicted if a jury found that you had sent Camera for the guns. The concern I have is that there were several monitored phone calls made which are damaging to you. This is known as constructive possession.

I am writing to you because you should be aware of the evidence against you. In addition, in federal court, under the Sentencing Guidelines, you receive three points off your sentencing level if you plead early. All in all, it will be very difficult to win your case at trial.

In terms of the sentencing guidelines, I made a preliminary review. Because the deal was for 80 grams of cocaine, you start off at level 16, which may be increased four levels due to the guns. I estimate that your criminal history is a category IV, giving you a sentencing range at level 20 of 51-63 months, if you accept responsibility, you will be reduced three levels, giving you a range of 37-46 months. The difference between the bottom of 37 and the top of 63 is 26 months or over two years.

I expect that I will receive the video tapes and audio tapes this week and will arrange to meet you at the Intake Center.

Very truly yours,

EDWARD C. ROY, ESQUIRE

ECR/..

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :

vs. : CR No. 03-070 S

LUIS OLIVERA :

**DEFENDANT'S OBJECTIONS TO PRE-SENTENCE REPORT**

The defendant hereby objects to the Pre-Sentence Report:

1. ¶ 23 The defendant's base offense level is calculated using an amount of cocaine of 215.1 grams, including 137.5 grams of cocaine from a prior alleged sale between this defendant and an informant. The defendant denies his involvement in this alleged sale.

2. ¶ 32 The defendant's offense level for the count of being a felon in possession is increased because of the application of a four level increase based upon the fact that the defendant possessed or transferred a firearm in connection with another felony offense. In this case, the defendant only constructively possessed the firearms in question and the firearms were never transferred for cocaine. Once the co-defendant transferred the cocaine, the ATF undercover agent transferred the firearms to the co-defendant. Once possession was complete by the co-defendant, no additional felony occurred.

LUIS OLIVERA,
BY HIS ATTORNEY,

EDWARD C. ROY, ESQUIRE
ASSISTANT FEDERAL DEFENDER
10 WEYBOSSET STREET, SUITE 300
PROVIDENCE, RI 02903
( 401 ) 528 - 4281